We'll hear argument next in Rabadi against Drug Enforcement Administration. Good morning. Good morning, Your Honors. My name is Joshua Lauther, and I represent the petitioner, Dr. Fares Jarius Rabadi. May it please the Court, I'd like to reserve three minutes for rebuttal, if the Court will allow. Keep an eye on the clock. Dr. Rabadi respectfully submits that the DEA tribunal that made findings of fact and a recommendation to the DEA administrator is unconstitutional as created. Specifically, Dr. Rabadi takes the position that it violates the take care clause of the US Constitution. Of course, the President is the head of the executive branch, and obviously, according to that clause, he must take care to make sure, take care that the laws are faithfully executed. He can't do that unless he has actual authority over those to whom he delegates certain tasks in furtherance of accomplishing that. Specifically, the administrative law judges can be removed only for cause by the MSPB. In turn, MSPB members can only be removed for certain enumerated reasons, negligence, inefficiency, malfeasance. The Fifth Circuit recognized in Jharkhasi v. SEC that this, quote, double-layer protection, end quote, that ALJs enjoy is a violation of that take care clause. Of course, as the Court's aware, based on the supplemental briefing that you requested, Supreme Court granted cert on that issue, and then we went to SEC v. Jharkhasi. Of course, the Fifth Circuit clearly found that this was a violation of the take care clause. So how do you distinguish from the Decker-Cole case, which is the Ninth Circuit case, from that Fifth Circuit case? Your Honor, in Decker-Cole, that relates to a Department of Labor issue. And the difference in Department of Labor and DEA is the Secretary under the statute, the Secretary of Labor may appoint an administrative law judge or any qualified individual. Under the DEA structure, the DEA administrator must appoint an administrative law judge who by statute is essentially can only be removed for cause. And I understand Decker-Cole obviously is a precedent in the Ninth Circuit, but because it is a Department of Labor case which does not require an ALJ, that would be the distinction. But the Decker-Cole also emphasized the review of the ALJ decision by politically accountable agency officials, and we have that here, don't we? Not necessarily, because, of course, the DEA administrator is appointed or serves at will, but yet you still have this double layer of protection. If I understand your question correctly, you still have this double layer of protection between the administrative law judge and that administrator that the Fifth Circuit recognizes. Yeah. I agree with that. But I guess the point of my question was the administrator may not be able to fire the ALJ, but the administrator can say, you know, I don't agree with the ALJ's decision in any given case and can review it de novo, can't he? True, but the administrator is not exactly in the same position to consider that on the merits as the ALJ, just simply meaning the ALJ obviously is the finder of fact and the ALJ makes the recommendation to the administrator. The administrator, like in this particular case and Dr. Rabati's case, the administrator adopted that opinion almost without change. There was no material changes. So the bottom line is, even if you say, okay, we have an ALJ, which the Fifth Circuit recognized is a constitutional problem, right? But, hey, in this case, I didn't mean to say hey, but in this particular case, you have the president who can, who does exercise clearly control over the DA administrator. Again, it doesn't solve that constitutional problem because the administrator is not in a position essentially to ignore if she chose everything that the ALJ recommended. But why not? I mean, the concern I take it with, you know, going back to free enterprise fund is that the president's authority to oversee the executive branch will be impaired if he's stuck with these ALJs that he doesn't like, wishes he could get rid of and they're doing things he doesn't like. But why can't, if that's the concern, why can't the president just say to the DA administrator, you know what? These ALJs are bad. I don't like them. Since I can't fire them, please just ignore what they do and exercise your de novo review authority to, you know, do whatever it is that I want you to do. He can say that, right? That is a possibility, certainly, but it wouldn't allow for the system to proceed. Just like the president has to delegate authority to the secretary of labor and the DA administrator, the DA administrator has to have someone when, you know, diversion investigators move to suspend or revoke a COR. Somebody has to hear these cases and the evidence and the facts. And the, for lack of a less generic way to say it, is the system simply wouldn't work if the DEA administrator is simply accepting wholesale or denying wholesale what these ALJs recommend. Do you have to show prejudice? Assuming you're right about the first part, what's the prejudice to the doctor here, if you're right? Your Honor, I — if I'm correct, I believe that we wouldn't have to show prejudice here. Again, for lack of a better analogy, if the structure of the tribunal is unconstitutional, it would be akin to structural error in a criminal case, for example. So this is not where the ALJ excluded an expert witness and we complain about that and, you know, hey, if the expert witness is not going to say anything different than what the DEA's expert says, it's harmless. I mean, I understand that harmless error applies in these cases, but on this particular issue, I believe Dr. Arati submits that we wouldn't have to actually show prejudice. And what about the Supreme Court's decision in Collins? Because that seems to suggest that, you know, when the problem is a limitation on removal authority, you need to be able to show that there's some reason to think the President might have removed this person, and I don't think you have that, do you? As that case relates to this, I'm not sure that we're — considering the holding in the Fifth Circuit that we're asking the Court to adopt, I don't think that is necessary. It wasn't explicit in that case, and I don't believe that it's necessary to make this finding. You're down to — you wanted to reserve three minutes? I do. You're on three minutes. All right. We'll hear from the Administrator. Good morning. May it please the Court. Anita Gay on behalf of the Respondents. With respect to Dr. Arati's jargassy claim, first of all, it was not raised below. It was never raised before the Administrator. It was never raised before the administrative law judge. It was not raised until it reached this Court, so it has been forfeited. Secondly, there is no merit to that claim. As Your Honor, Judge Miller was pointing out, the removal protection for the DA ALJs is much more similar to what was presented to this Court in Decker Cole, and Decker Cole is controlling here. In Decker Cole, you had ALJs who were inferior officers, who were not policymakers, who were — had the protection of Section 7521, which this Court found constitutional in Decker Cole. But you also had a Secretary of Labor who was removable at will by the President. And here you have a very similar pattern, a situation of administrative law judges who are not policymakers, who are subject to the direction and control of the DEA Administrator. They do not promulgate rules. They do not make regulations. They do not set policy. That is all what the DEA Administrator does. And she also — they serve according to the rules and the policies that she promulgates. Now, they would — they are removable at will through the Merit System Protection Board under 7521, but they do not have a dual level of protection, which is what has been found unconstitutional in the Jarkissi case in the Fifth Circuit. But the Jarkissi — it's actually SEC v. Jarkissi, the U.S. Supreme Court case — does not affect this matter. I know in the supplemental brief that Dr. Rabati, again, for the very first time, alleged that he had a right to a jury trial in this matter based on the theory in Jarkissi that there was a common law fraud claim, and so therefore he should have been entitled to a jury trial. We have here is an administrative proceeding with administrative sanctions, no civil penalties, no fines, no imprisonment. So the Seventh Amendment claim, which, again, was just raised in their supplemental brief, and we did not have the opportunity to review that or brief that thoroughly before this Court. But the — Judge Malloy, you were correct that the DEA situation here is similar to that of Decker Cole. Also, Judge Malloy, in your question, you were correct that the cases from the Supreme Court, from this circuit, and from other circuits have also found that one must establish prejudice in order to have relief. And what he would be seeking, apparently, is a new hearing before a different administrative law judge or before a different tribunal. He doesn't exactly spell out what it is that he's seeking, other than to vacate the DEA's decision in this case. And also, I don't know if you want to talk about the actual prescribing practices of Dr. Jarkozy and how they failed to satisfy any of the requirements of the Controlled Substances Act. It's a closed regulatory system. It is critical to have the closed regulatory system to prevent abuse and diversion of controlled substances. And that's why he was obligated, excuse me, to comply with State, local, and Federal regulations and statutes. He failed to satisfy the California standard of care. And it was interesting in the prior argument, Judge Molloy, when you were talking about, well, isn't it important, I think your statement was something about, isn't it important that the physician take a physical history from the patient? And that's one of the things that Dr. Rabati did not do in the — in treating his patients. He would not take a history. At least four times in the transcript when he testified, he stated that he did not maintain records because he had a photographic memory. Well, being able to maintain records in your head does not satisfy your obligations under California or Federal law with respect to controlled substances. It's important for future practitioners to know what treatment you had. It's important for you to be able to maintain the records of why you were treating the patient this way. He didn't do — there were a number of things that he should have done when giving out these serious controlled substances. Many Schedule II opioids, dangerous combinations of drugs, high — high dosage amounts of drugs. He didn't have urine drug tests. He would not screen his patients — excuse me again — to make sure that the drugs they were prescribed that they were taking, that they weren't taking illicit substances, or that the urine drug tests would show that they were not taking the drugs they were prescribed. And when he checks the — the cure system, which is the California Prescription Drug Monitoring Program, and discovered that at least two of his patients were receiving identical drugs, a suboxone, which is treated — which is used to treat people with opioid dependence disorder, he continued to prescribe that and other controlled substances to those patients. So he — the administrator properly found in weighing the factors under 21-823 of his experience in dispensing controlled substance, his compliance with State and Federal law, that he — that he had failed to satisfy the — the administrator's requirement, that he showed that he could be entrusted with the registration going forward, and revocation was appropriate. Can I — can I ask you to go back to the point you made at the very beginning about exhaustion? If he — if he had raised his argument that the ALJs are unconstitutionally appointed, would either the ALJ or the administrator have been able to provide any relief based on that argument? Well, let me clarify. What Your Honor just said is, if he had challenged the appointment, which was done by — Or — I mean, not the — the restriction on removal is unconstitutional. Because when the appointment issue was raised, they — the litigants did obtain relief in — you know, as the Court is aware of, Lucia after Lucia, they did obtain relief. All of the ALJs were then properly appointed. If — if Dr. Rabati had challenged the removal part of the ALJ, in this situation, no, because again, they — they do not have two levels of removal protection, which is what would make it unconstitutional under the Take Care Clause. Well, okay. So that — that's an argument that — I mean, your argument is that his claim fails on the merits here, and I guess you're saying if he had raised it there, it would have failed on the merits there. But my question is, did — would the ALJ, even if — even if we assume for a moment — like, suppose that the argument is meritorious, could the ALJ have done anything about it? Does the ALJ have authority to declare the statute unconstitutional? Well, the ALJ can — conducts pre — I mean, pre-hearing procedures akin to what you would have in a — in a regular court, where they follow the rules of evidence, they'll call witnesses, they have motions to eliminate, motions to suppress, they can raise other legal claims. I had a recent case where some patients moved to intervene to participate in the hearing. So the ALJ will deal with all of those issues that come up, and then will make a recommendation to the administrator, and the administrator would rule on that. Also — And that could include declaring the statute unconstitutional? Yes. And — and then, also, I'm not — I'm not certain because it hasn't been raised in the DEA, but it would seem like under the Axon line of cases that they may also be able to obtain relief in district court if — if the administrator, if the ALJ or the administrator ruled against that. But, again, they did not raise it here. Right. But I guess — so we have a number of cases, and the Supreme Court does, too, that say that you don't necessarily have to exhaust constitutional challenges to the — before the agency. So why — why is this not like those cases? Well, because that would be like the cases that the court would be familiar with in — in criminal cases, where you're not allowed to go through the proceeding. You know, some of the cases refer to this as a gotcha remover — a gotcha attempt, which is they go through the proceeding, and then if they obtain an unfavorable result, then they say, oh, by the way, this was unconstitutional, or you were not properly subjected.  You know, but we have distinguished between procedural due process constitutional challenges and challenges such as this, which are based on the structure. So for — mostly in immigration cases, we say you don't have to exhaust constitutional challenges not based in denial of due process in the proceeding. So, again, do you believe that the administrator had the authority to unilaterally declare the statute on — or this mechanism unconstitutional? What's your authority for that? I don't have authority for the administrator's ability. And that's been our logic, is that the agency can't declare a statute or the procedure unconstitutional in and of itself. But the agency could at least give a decision on that, which could then be reviewed by an Article III court to say either your motion to dismiss for having an unconstitutionally appointed, unconstitutionally — ALJ, who is not subject to removal under the take-care clause, and then that could go to an Article III court for a ruling on the constitutionality But to not raise the issue at all, to go through the proceeding and then afterwards on — after the — after the ALJ's recommendation, after the administrator's adoption of that, after the final order, to then come in and say, by the way, this was — this is unconstitutional and the ALJ had no authority to hear this, seems to be not — not a — not a constitutional or not a — not a fair process. I mean, he was given due process, he had a hearing, he had the ability to call witnesses, filed motions, testified, cross-examined everybody. I respectfully request you to deny the petition. Thank you. Thank you, Ms. Gay. Without belaboring — without belaboring the point, as in Wang v. Reno, that's a Ninth Circuit case, it clearly states that Bureau of Immigration Appeals has no authority to hear constitutional claims and, therefore, there's no exhaustion requirement. I simply bring that up, even though the Court already noted it, that there is no difference in the structure or the procedure, essentially, of the DEA tribunal nor an immigration court. Last time I was here, I was told I had 10 minutes, but I didn't have to use it all, so absent questions, that's all. All right. Thank you very much. Thank you. Thank both counsel for their arguments. The case is submitted.
judges: THOMAS, MILLER, Molloy